Gary ROBBINS, d/b/a Robbins
Bail Bonds, Appellant,

v.

Terry ROBERTS, Appellee.

No. 07–90–0348–CV.

Court of Appeals of Texas,
Amarillo.

June 10, 1992.

Rehearing Denied July 14, 1992.

The Law Offices of Tom R. King, Doyle Ross Jackson, Lubbock, for appellant.

David A. Schulman, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

In a bench trial, Gary Robbins, d/b/a Robbins Bail Bonds, was found to have unreasonably surrendered his principal, Terry Roberts, and was ordered to refund to Roberts $1,000 of the $2,000 bond fee paid, together with $350 for his attorney's fees. Appealing with four points of error, Robbins contends the trial court erred in overruling his (1) motion to quash Roberts' motion to return funds, (2) objection to venue in Lubbock County, (3) contention that the issue of reasonableness of surrender was barred from litigation by the doctrine of collateral estoppel, and (4) motion for new trial because of insufficient evidence to support the court's order. We will overrule the points and affirm.

Charged with the offense of theft in cause no. 88–408,534 on the docket of the 72nd Judicial District Court of Lubbock County, Roberts was arrested in Tarrant County. For a fee of $2,000, Robbins, a resident of Tarrant County, provided a $10,000 surety bond for Roberts' release from custody on 16 December 1988. Roberts agreed in writing that the conditions of his bond required him to: (1) call Robbins' office each Tuesday to check in; (2) notify Robbins within 24 hours of any change of address, phone number, or employment; (3) hire an attorney and notify Robbins of his name, address, and phone number within three weeks from the date the bond was posted; (4) appear in court each time he was directed to by Robbins; and (5) not leave the Metroplex area unless authorization and permission was received from Robbins.

Subsequently, on 29 September 1989, Robbins executed, and filed with the trial court, an affidavit to surrender Roberts, giving these reasons: "Subject driving Truck Moved and left no Address unable to Locate." By a 4 October 1989 order of the trial judge, a warrant for the arrest of

Roberts was issued, and he was rearrested on 28 October 1989 at his address in Watagua, a suburb of Fort Worth, in Tarrant County. By a 7 November 1989 order of the trial judge, the amount of Roberts' bond was reduced to $2,000 cash, which was deposited and Roberts was released from custody.

Thereafter, on 17 April 1990, Roberts filed with the trial court in cause no. 88–408,534 his motion for the return of the bond fee paid Robbins upon the allegations that he abided with his agreement, but Robbins surrendered his bond without reasonable cause. The court set a hearing on the motion.

Robbins initially moved to quash the citation and the motion on the grounds that no pleading was filed by Roberts that brought him, Robbins, into the lawsuit; no proper service of citation had been issued from the court; and, therefore, the court lacked jurisdiction to hear the motion and grant the relief Roberts requested. Alternatively, Robbins answered and claimed attorney's fees.

Pretrial, the court heard Robbins' quashal motion, during which the parties recognized, and Roberts urged the operative effect of, the civil statutory provisions for the surety's surrender of a principal, to-wit:

Sec. 12. (a) No person who executes a bail bond as a surety for a principal may surrender the principal without the written permission of the judge having jurisdiction of the case after the person who executed the bail bond has executed an affidavit to be filed with the clerk of the court stating:

(1) the date the bond was made;

(2) the fee paid for the bond; and

(3) the reason for the surrender.

(b) If the reason for surrender is deemed without reasonable cause by the principal, any agent of the board, or any attorney representing the state or any accused in the proceeding, that person may bring the matter to the attention of the court.

(c) If the court determines that the person who surrendered the principal did so without reasonable cause, the court in its discretion may require that all or a part of the fees paid as a condition for making the bail bond shall be returned to the principal. In making the determination the court shall determine what fees, whether denominated fees for the making of the bond or not, were in fact paid for the purpose of inducing the surety to make the bond.

Tex.Rev.Civ.Stat.Ann. art. 2372p–3, § 12(a)-(c) (Vernon Supp.1992).

Nevertheless, Robbins, pointing out that the statute applies to the commissioners court's governing of the bail bond business, asserted that the statute does not grant venue to the court, or waive it, and furnishes no procedural guide. Furthermore, he proposed, because the surrender was sanctioned by Article 17.19, Texas Code of Criminal Procedure Annotated (Vernon Supp.1992), the court, in issuing the warrant of arrest, impliedly found, pursuant to subsection (b) of the article, there was cause for the surrender and, thus, Roberts' motion would be a collateral attack on that finding. Therefore, he argued in conclusion, Roberts' action should properly be brought as a civil matter, particularly in view of the scope of the rules of civil procedure, one of which provides that:

These rules shall govern the procedure in the justice, county, and district courts of the State of Texas in all actions of a civil nature, with such exceptions as may be hereinafter stated.... All statutes in effect immediately prior to September 1, 1941, prescribing rules of procedure in bond or recognizance forfeitures in criminal cases are hereby continued in effect as rules of procedure governing such cases, but where such statutes prescribed no rules of procedure in such cases, these rules shall apply....

Tex.R.Civ.P. 2.

Following the hearing, the court overruled the quashal motion. The court's ruling is the premise for Robbins' first three points of error, which will be addressed generally rather than seriatim.

■ A surety on a bail bond assumes an obligation to the State that is separate and

apart from any obligation owed to the principal under the agreement between them. The surety may discharge its obligation to the State in the criminal case by surrendering the principal, *Karakey v. Mollohan*, 15 S.W.2d 692, 693 (Tex.Civ.App.—El Paso 1929, no writ), but, prior to the enactment of article 2372p–3, § 12, *supra*, the surety's obligation to the principal was resolved in a separate civil cause. *Id.; Ex parte Vogler*, 495 S.W.2d 893, 895 (Tex.Cr.App. 1973). However, the advent of article 2372p–3, § 12, *supra*, operating in conjunction with the criminal procedure articles concerning the surrender of a principal, provided a remedy for the principal to recover all or part of the bond fee paid if the surrender was without probable cause, *McConathy v. State*, 545 S.W.2d 166, 168–69 (Tex.Cr.App.1977), in addition to the remedy of a separate civil action. *Id.* at 169 n. 3; *Dunn v. Brown*, 584 S.W.2d 535, 538 (Tex.Civ.App.—Eastland 1979, no writ). Given the specific provision for the remedy, it governs when invoked. *Cf. Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex.1983) ("The Texas Rules of Civil Procedure govern proceedings in probate matters except in those instances in which a specific provision has been made to the contrary. Tex.R.Civ.P. 2.").

■ Although the remedy provided by article 2372p–3, § 12, *supra*, is expressed without detailing the procedure therefor, it is of no moment. Clearly, by the very language of the statute, jurisdiction and venue to determine the allegation that the surrender was without reasonable cause is vested in the court "having jurisdiction of the [criminal] case." Indeed, the prescriptive language of the statute mandates venue for the remedy in that court. Tex.Prac. & Rem.Code Ann. § 15.016 (Vernon 1986).

■ Absent statutory specificity of either the manner in which the principal or other party "may bring the matter to the attention of the court," or the form of notice to the surety, due process must be afforded. The manner of bringing the matter to the court's attention, whether by motion or other written instrument, will satisfy due process if the writing gives fair

and adequate notice of the facts upon which the principal or other party alleges that the surrender was without reasonable cause, and contains information sufficient to enable the surety to prepare a defense. *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). The form of the notice will meet due process requirements if it conveys the information in, or incorporates, the motion or other written instrument, and is timely served on the surety before the setting, if any, made by the trial court. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex.1978). Parenthetically, we observe that, other than attacking the lack of a formal petition and citation of service in a separate civil suit, Robbins has not challenged the adequacy of Roberts' motion, or the notice he received, or the lack of an opportunity to be fully heard.

No more compelling is Robbins' third point by which he contends the issue of the reasonableness of the surrender was barred from litigation under the doctrine of collateral estoppel. This obtains, Robbins says, because the issue had been previously determined when he surrendered Roberts on 4 October 1989 without an objection.

■ Collateral estoppel, more narrow than the claim preclusion of res judicata, is issue preclusive and bars the relitigation of any ultimate issue of fact or law that was actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). To invoke the doctrine of collateral estoppel, Robbins had the burden to establish (1) the issue of reasonableness of the surrender was fairly and fully litigated when he surrendered Roberts on 4 October 1989, (2) that fact was crucial to the surrender, and (3) he and Roberts were cast as adversaries in the surrender. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). Moreover, due process requires that collateral estoppel operate only against a person who had his day in court either as a party to the prior proceeding or as a privy; but, if not, then at least the presently asserted interest was actually and adequately represented in the prior

proceeding. *Benson v. Wanda Petroleum Company*, 468 S.W.2d 361, 363 (Tex.1971).

██ Under this record, it is undisputed that Roberts was neither informed of nor present at the proceeding for his surrender. There is no evidence that the stated reason for the surrender was fully and fairly litigated when the surrender occurred; indeed, the opposite is apparent, for not only does the language of article 2372p–3, § 12, *supra*, provide for a determination of reasonable cause after the surrender, but the trial judge has no authority to refuse the surrender when the surety has submitted the requisite affidavit. *McConathy v. State*, 545 S.W.2d at 168. Accordingly, reasonable cause for the surrender was not crucial to the surrender itself.

It follows that the trial court cannot be faulted for overruling Robbins' quashal motion upon finding that the court had jurisdiction and venue of the proceeding, and that collateral estoppel did not bar litigation of the issue of reasonable cause. Robbins' first three points of error are overruled.

██ With his fourth point, Robbins maintains the court's order was not supported by sufficient evidence, thereby presenting a factual insufficiency of the evidence contention. Therefore, we will review all of the evidence, and will set aside the court's finding that the surrender was without reasonable cause only if it was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Robbins insists that he carried the burden to show the finding so varied from the evidence as to be clearly wrong and unjust. He first points to Roberts' testimony that he was very poor with numbers and had a great level of difficulty in remembering. The testimony revealed that Roberts gave different numbers for his Douglas Street address in Watagua at the time of his arrest, and admitted that he "might have the numbers turned around." Robbins sent a letter to Roberts at the address he was given, but the letter was returned unclaimed.

Second, Robbins asserts that the evidence shows Roberts had a habit of not

notifying his attorney, his mother, and Robbins where he was located. This evidence showed that Roberts' attorney listed his original address as one different from the one stated by Roberts, and that his mother, who said she knew where he lived, did not know how to contact him. At the time he was rearrested, Roberts was working for an employer other than the one he was employed by at the time the bond was made and, even if he did notify Robbins of his change of address and employment, he did so outside the 24–hour period.

Furthermore, Robbins offers, Roberts never denied he was not making his weekly call required by the contract. Robbins had not heard from him since August, 1989. Roberts did go to Denver once in connection with his job and, even if he notified Robbins of the trip, it would still support a belief by Robbins that he may leave the state again. All these elements, Robbins concludes, demonstrate that he had every reason to feel insecure about Roberts and completely justified his decision to surrender him.

Roberts responds that Robbins has not carried his burden. Conceding that he was bad with numbers, Roberts says the evidence suggests that both Robbins and his attorney had his correct address. His attorney received his correct address by calling Robbins. Statements from his attorney were mailed to his correct Douglas Street address and not returned; but, although he notified Robbins of his Douglas Street address within 24 hours, the letter from Robbins was addressed to an incorrect street number.

Although Robbins gave as a reason for the surrender that he was driving a truck, Roberts testified that he had not been a truck driver for more than five years. When he went to Denver, he notified Robbins and obtained permission for the trip. He never left the Metroplex area without receiving prior authorization and permission from Robbins.

Roberts' mother gave testimony that he called her collect every week, but she did not contact him because he did not have a phone. Before Roberts was rearrested,

she received a call from Robbins' office. She was told Roberts had left the state and was driving a truck, and the bondsman would have to have $4,000 or Roberts would be rearrested. When Roberts called, she informed him of the call from Robbins. He called Robbins' office the day before he was arrested and talked with a woman, gave his Douglas Street address and employer's name, verified his phone number, and was told that "she hadn't heard anything," and that he had not been put "in the computer."

Given the contradictory and conflicting evidence, it was the province of the trial judge, as the trier of fact, to judge the credibility of the witnesses and the weight to be given their testimony, to believe or disbelieve all or any part of the testimony of the witnesses, to resolve the inconsistencies in the testimony, and to arrive at the finding on the issue of reasonable cause he considered most reasonable under the evidence. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951). Even though the record contains evidence which, if believed, supports Robbins' claim of reasonable cause for the surrender, we cannot say, from this record, that the court's finding that the surrender was without reasonable cause is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Robbins' fourth point of error is overruled.

The judgment is affirmed.