11th Court of Appeals

 Eastland, Texas

  Memorandum Opinion

 

David Wells 

Appellant 

Vs.                   No. 11-02-00124-CV - Appeal from Dallas County

Michael J. Irvin 

Appellee

 

David
Wells sued Michael J. Irvin to recover $146,700 for personal services rendered
pursuant to an alleged contract.  Wells
alternatively sought recovery under a quantum meruit theory. In a bench trial,
the trial court found that there was no contract between Wells and Irvin and
that Wells did not provide any services to Irvin for which he reasonably
expected to be compensated. The trial court entered a take-nothing judgment
against Wells. We affirm. 

In one
issue on appeal, Wells asserts that the trial court=s finding that he did not provide services
for which he reasonably expected payment is against the great weight and
preponderance of the evidence.  We
disagree.








There is
no challenge to the legal sufficiency of the evidence.  In determining a great weight issue, we must
consider and weigh all the evidence and should set aside the verdict only if it
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Cain v. Bain, 709
S.W.2d 175 (Tex.1986); In re King=s Estate, 244 S.W.2d 660, 661 (Tex.1951). 
The standards that apply to a review of jury findings also apply to
findings made by the trial court after a bench trial.  Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex.1994). Where a case has been tried without a jury and there is ample
evidence in the record to support the findings of the trial court, such
findings have the same force and effect as a verdict of the jury and will not
be disturbed on appeal absent other error.  
The trial court, as the trier of fact, may take into consideration all
the facts and circumstances surrounding the testimony when considering whether
it will accept or reject all or any part of the testimony.  Valencia v. Garcia, 765 S.W.2d 893
(Tex.App. B San Antonio 1989, no writ). As the trier of
fact in a bench trial, it is the province of the trial court to determine the
credibility of the witnesses and the weight to be given to their testimony and
to resolve any conflict in the testimony. 
Robbins v. Roberts, 833 S.W.2d 619, 624 (Tex.App. B Amarillo 1992, no writ).

Wells and
Irvin first met in 1996 during a criminal trial involving Irvin.  Irvin pleaded guilty, and the trial court
placed him on community supervision for four years.  Royce West was Irvin=s attorney.  West hired Wells to
assist in the investigation.  After the
plea,  West told Wells that Irvin was
going to need help in completing his community supervision.  Wells testified that he spoke with Irvin
about drawing up a contract for these services during Irvin=s community supervision.  Wells also maintained that he told
Irvin:  AIf I get you off probation successfully, which I know I will get you
off probation successfully, then we=ll settle up at that point. 
That way I wouldn=t put no pressure on myself; wouldn=t put no pressure on Mr. Irvin.@  Wells said that he and Irvin
made the deal on a Afriendship
handshake.@ 
Wells sought compensation for scheduling community service, attending
community supervision meetings, providing investigative services for Irvin when
other incidents arose, and providing personal protection.

During the
time that he was on community supervision, Irvin often went to the Cowboy
Sports Cafe.  The cafe was owned by
Alfredo Roberts who employed Wells as security at the cafe.  Roberts testified that, when Irvin was in
the cafe, Wells would act as a Abuffer or security type@ to Irvin.  When Wells was
working as security at the cafe, all players who came into the cafe received
the same security.

Roberts
also hired Mark Toliver as security in the cafe.  In addition to his security work at the Cowboy Sports Cafe,
Toliver was a Dallas County Deputy Sheriff. As a deputy, Toliver was assigned
to the trial court where Irvin entered his plea.  Deputy Toliver testified that he knew about an agreement between
Wells and Irvin; Wells was to provide community supervision services as well as
personal protection services for Irvin. 
Deputy Toliver saw Wells accompany Irvin to community supervision
meetings at the courthouse.  Deputy
Toliver said that, when Irvin was in the cafe, A[w]herever Mike was, David was.@

Nigel
Reynolds was Irvin=s
community supervision officer.  He
testified that, when Irvin could not make his community supervision meetings or
when there was a scheduling conflict, Irvin contacted him through Wells.  Wells was with Irvin at each of the
community supervision meetings, and there were at least 92 meetings.








Irvin
testified that Wells came to some of the community supervision meetings and
that Wells coordinated some of his community service hours.  The first 300 hours of community service
involved manual labor that Irvin performed at a hospital.  Wells did not schedule nor did he attend
these community service hours.  Wells
did not provide personal protection services to him.  Irvin agreed that, when he was at the cafe, Wells acted as a
buffer between him and other patrons. 
Irvin considered Wells a friend who had helped him during a difficult
time.  Other than for his services as a
bail bondsman, Irvin never agreed to pay Wells any money.  Wells had a $1,500 check made to him from Irvin
which he contended was one payment made to him for the services he provided to
Irvin.  Irvin said that he loaned $1,500
to Wells and that it was not a payment for anything.

B. J.
Davis, a private investigator and security specialist, testified that he was
hired by the Dallas Cowboys to Aensure the well-being of Michael Irvin regarding his personal safety
and his responsibility to the Dallas Cowboys organization.@ 
Davis and his agency performed 24-hour surveillance on Irvin and
documented Irvin=s presence when such documentation was
needed.  Further, Davis and his agency
checked the parking lot of places where Irvin was or was scheduled to be and
checked license plate numbers through a database in order to determine whether
there were any protection problems.  If
the database contained the names of someone known to cause problems, Davis or
his agents took steps to prevent possible problem-causing  persons from entering the place.  If potential problem-causing persons were
already present, Davis or his agents discouraged Irvin from entering the
facility.  These services were paid for
by the Dallas Cowboy organization and were rendered between September 1997 and
January 1998.

A party
can recover in quantum meruit only when the subject matter is not covered by an
express contract.  Truly v. Austin,
744 S.W.2d 934 (Tex.1988).  If there is
no contract, a claimant has the burden to establish that:  (1) valuable services were rendered or
materials furnished for the person sought to be charged; (2) the services and
materials were accepted by the person sought to be charged; (3) they were used
and enjoyed by him; and (4) under such circumstances as reasonably notified the
person sought to be charged that the claimant was expecting to be paid by the
person sought to be charged.  Vortt
Exploration Company, Inc. v. Chevron U.S.A. Inc., 787 S.W.2d 942
(Tex.1990).  








Wells is
attacking a finding upon which he had the burden of proof.  Therefore, he must show that the adverse
finding is so against the great weight and preponderance of the evidence as to
be clearly wrong and manifestly unjust. 
Broach v. Bradley, 800 S.W.2d 677 (Tex.App. B Eastland 1990, writ den=d); Robert W. Calvert, ANo Evidence@ and AInsufficient Evidence@ Points of Error, 38 TEXAS L. REV. 361 (1960). 

We have
reviewed all the evidence, and we find that it supports the trial court=s finding that any community supervision
services and investigative services Wells provided were on behalf of West.  Also, the evidence supports the finding that
any security services Wells provided were on behalf of Roberts.  The testimony also supports a finding that
Wells was acting in the capacity of Irvin=s friend.  Other friends as well
as family members helped Irvin in the same manner as Wells. Other friends and
family members also ensured that Irvin was where he was supposed to be, and they
also helped people contact Irvin. 
Further, on occasion, other friends and family members accompanied Irvin
to his community supervision meetings. 
There was ample evidence to support the trial court=s finding that the circumstances were not
such as would reasonably notify Irvin that Wells expected to be paid.  

 We have examined all of the evidence in the
record.  The trial court=s failure to find for Wells on the issue of
quantum meruit is not so against the great weight and preponderance of the evidence
as to be clearly wrong and manifestly unjust. 
Wells=s sole issue on appeal is overruled. 

The
judgment of the trial court is affirmed.                                                                       

 

JIM R. WRIGHT 

JUSTICE

 

October 16, 2003

Not designated for
publication.  See TEX.R.APP.P.
47.2(a).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.