# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00221-CV

### Old Republic Surety Company, Appellant

**v.**

### GAC-MD, Inc. d/b/a/ German Auto Center, Appellee

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. 262,122, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Old Republic Surety Company appeals the judgment of the county court at law rendered in favor of GAC-MD, Inc. ("GAC") following a bench trial. The judgment allowed GAC to collect against a motor vehicle dealer surety bond issued by Old Republic. Old Republic raises three issues on appeal: that the trial court erred when it denied Old Republic's motion for summary judgment, that the evidence supporting liability under the bond was legally and factually insufficient, and that the trial court erred in relying on GAC's expert testimony regarding attorney's fees. We affirm the judgment.

## FACTUAL BACKGROUND

GAC is a motor vehicle dealer that was involved in over a hundred transactions with another motor vehicle dealer, Lifta Auto Sales. As required by section 503.033 of the Texas

Transportation Code, Lifta obtained a surety bond issued by Old Republic in the amount of $25,000 conditioned on the payment of all valid bank drafts drawn by Lifta for the purchase of motor vehicles. *See* Tex. Transp. Code Ann. § 503.033 (West 2003). The transactions between GAC and Lifta were accomplished by one party sending a sight draft[1] to the other party's bank along with the title of the vehicle. The buyer would inspect the title and authorize its bank to transfer funds in the amount of the sight draft to the seller's account.

In April of 2001, Lifta presented a sight draft in the amount of $17,100, along with the title to a 1998 Dodge Durango, to GAC's bank. Lifta also delivered the vehicle to GAC. Granville Mitchell Deane, III, President of GAC, was out of town at the time and his secretary went to the bank, picked up the title and the sight draft, and directed the bank to transfer the $17,100 to Lifta. Once Deane returned to GAC, he discovered that the vehicle had been delivered and paid for. He contacted Lifta and informed them that he did not want the vehicle and that they should repurchase it. Deane agreed with Lifta to deliver the vehicle, on behalf of Lifta, to an auction house; Lifta agreed to pay GAC $17,150. This figure was to represent the money paid by GAC in addition to a $50 fee charged for the draft by GAC's bank. GAC delivered the truck and presented the title and a sight draft to Lifta's bank. The draft was never paid.

GAC brought suit against Lifta for the money owed in the draft and obtained a default judgment for $17,150 plus $6,860 in attorney's fees. GAC then made a claim with Old Republic for recovery under the surety bond issued to Lifta. Old Republic denied the claim stating that the

---

[1] A sight draft is a "demand for payment drawn by a person to whom the money is owed. The draft is presented to the borrower's bank in expectation that the borrower will authorize the bank to disburse the funds." Black's Law Dictionary 1381 (6th ed. 1990).

damages represented by GAC's judgment were not "for the purchase of a motor vehicle," but rather for a failure to repay funds that were improperly drawn in a transaction to sell a vehicle. GAC brought suit against Old Republic to collect the judgment.

Both GAC and Old Republic filed motions for summary judgment which were denied by the trial court. At a bench trial, Deane testified regarding the transaction between GAC and Lifta, and GAC's attorney testified regarding attorney's fees. Old Republic presented no witnesses. The trial court rendered judgment for GAC and awarded $25,748.06, consisting of the principle sum of the default judgment against Lifta, post-judgment interest, and attorney's fees awarded in the underlying judgment. The court also awarded $10,299.22 in attorney's fees as well as $5000 in contingent attorney's fees for each step in the appellate process.

## DISCUSSION

### Summary Judgment

Old Republic first contends that the trial court erred in denying its motion for summary judgment. Generally, a denial of a motion for summary judgment is not reviewed after a trial because additional facts may be developed at trial which were not available at the time of the denial of the motion. *See Ackerman v. Vordenbaum*, 403 S.W.2d 396, 365 (Tex. 1966). Because a trial on the merits was held, we do not review the trial court's denial of Old Republic's motion for summary judgment. *Nuby v. Allied Bankers Life Ins. Co.*, 797 S.W.2d 396, 397 (Tex. App.—Austin 1990, no pet.); *Ackerman*, 403 S.W.2d at 365 (appellate review of an overruled motion for summary judgment could be patently unjust). We overrule Old Republic's first issue.

3

**Sufficiency of the Evidence**

In its second issue, Old Republic contends that the evidence presented at trial was legally and factually insufficient to sustain the verdict. Specifically, Old Republic contends that the evidence presented at trial did not establish its liability under the surety bond it issued to Lifta. In reviewing a legal sufficiency challenge, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proven in the particular case. *Id.*; *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In reviewing a verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re Kings's Estate*, 244 S.W.2d 660, 661 (Tex. 1951); *Simmons v. City of Austin*, 921 S.W.2d 524, 527 (Tex. App.—Austin 1996, writ denied).

As the trier of fact in a bench trial, the court determines credibility of the witnesses and the weight to be given to their testimony, whether to believe or disbelieve all or any part of the testimony, and how to resolve any inconsistencies in the testimony. *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 515 (Tex. App.—San Antonio 2001, pet. denied); *Robbins v. Roberts*, 833 S.W.2d 619, 624 (Tex. App.—Amarillo 1992, no writ). We may not interfere with the fact finder's resolution of

4

conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 239 S.W.2d 792, 796 (Tex. 1951). When there is conflicting evidence, we usually regard the findings of the trier of fact as conclusive. *See Lifshutz*, 61 S.W.3d at 515; *Jauregui v. Jones*, 695 S.W.2d 258, 263 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

A valid claim may be made against a surety bond when a judgment has been obtained by the claimant based on an act or omission that violated a condition of the bond. Tex. Transp. Code Ann. § 503.033(d) ("[A] person may recover against a surety bond or other security if the person obtains . . . a judgment assessing damages and reasonable attorney's fees based on an act or omission on which the bond was conditioned."); *Gramercy Ins. Co. v. Arcadia Fin. Ltd.*, 96 S.W.3d 320, 324 (Tex. App.—Austin 2001, pet. denied). The surety's liability is determined by the language of the bond itself. *See Arcadia Fin. Ltd.*, 96 S.W.2d at 324; *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 725 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("violation of bond condition is a predicate to the surety's liability and the claimant's recovery on a motor vehicle dealer's surety bond").

The relevant condition of the surety bond to Old Republic's liability covers "the payment by the applicant of all valid bank drafts, including checks, drawn by the applicant to buy motor vehicles." Tex. Transp. Code Ann. § 503.033(b)(2)(A).[2] Old Republic's sufficiency

---

[2] The language on the surety bond issued by Old Republic actually reads, "the Principal shall pay all valid bank drafts, including checks, drawn by the principle for the purchase of motor vehicles . . . ." This variance between the language of the bond and statutory language has been found insignificant and the statutory language controls. *See Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992) (statute mandating bond is made part of the bond and is controlling); *Gramercy Ins. Co. v. Arcadia Fin. Ltd.*, 96 S.W.3d 320, 322 (Tex. App.—Austin 2001, pet. denied); *Gramercy Ins. Co. v. Auction Fin. Program, Inc.*, 52 S.W.3d 360, 363 n.2 (Tex. App.—Dallas 2001, pet. denied).

challenge therefore hinges on whether there was sufficient evidence to establish that GAC's judgment was based on an act or omission regarding the payment of valid bank drafts drawn by Lifta to buy a motor vehicle. *See id*. § 503.033(b)(2)(A).

The condition listed in section 503.033(b)(2)(A) of the Texas Transportation Code has been interpreted in various contexts. *See id*. § 503.033(b)(2)(A) (West 2003). In *Gramercy Insurance Co. v. MRD Investments*, the court discussed whether a motor vehicle dealer's failure to pay a floor plan financing arrangement was covered by the condition listed in that section. 47 S.W.3d at 724. MRD financed a dealer's purchase of two BMW vehicles through a floor plan arrangement. *Id*. The dealer issued sight drafts drawn on MRD's bank account to purchase both vehicles and those drafts were paid on presentment. *Id*. at 723. The dealer then gave two checks to MRD for the sum drawn from MRD's account. These checks were returned due to insufficient funds. *Id*. Citing the language of section 503.033(b)(2)(A), the court explained that the surety was only liable under the bond conditions if the unpaid checks were given to *purchase* the vehicles. *Id*. at 726. The court then explained that the checks were given to repay the financing rather than to purchase motor vehicles, and, therefore, that the surety was not liable under the bond. *Id*. at 727. *See also Lawyers Sur. Corp. v. Riverbend Bank*, 966 S.W.2d 182, 187 (Tex. App.—Fort Worth 1998, no pet.) (bond does not cover failure to pay promissory note on floor plan agreement financing purchase of motor vehicles).

In *Gramercy Insurance Co. v. Auction Finance Program*, *Inc.*, a claim was allowed against a surety bond when a dealer's checks delivered to an auction house were dishonored. 52 S.W.3d 360, 362 (Tex. App.—Dallas 2001, pet. denied). The transactions at issue involved a dealer

6

making payment to an auction house for the price of a car plus the auction house's fees. *Id*. The auction house would then hold the checks and pay the seller out of its own funds. *Id.* The dealer's check was not deposited by the auction house for a negotiated period of time to enable the dealer to locate a buyer. *Id.* When a dealer's checks were dishonored, a judgment was obtained against the dealer and a claim was made against the surety bond. The surety brought a declaratory judgment action seeking a declaration that it was not obligated to pay the claim. *Id*. at 363.

Again, the issue was whether the dealer's dishonored checks were a violation of a condition of the bond. The court distinguished *MRD* and *Riverbend* explaining that, in the floor plan cases, separate instruments were used by the dealer's to complete the transaction's. *Id*. at 366. First, the dealer used a bank draft drawn on the floor plan company's account to purchase the vehicle. Then promissory notes or checks were written to repay the loans or lines of credit. *Id*. Because the vehicle was already "purchased" prior to the dealer's default in repaying the note on the floor plan agreement, the dealer's failure to pay did not violate a condition of the statutory bond. *Id*. The court distinguished the transaction in *Auction Finance* noting that only one instrument was used by the dealer to accomplish the transaction. The dealer's checks to Auction Finance were to "buy motor vehicles" rather than to repay a loan. *Id*. at 367.

In its brief, Old Republic argues there is no evidence that Lifta's unpaid bank draft was issued to buy a motor vehicle. Rather, Old Republic contends that the evidence showed GAC rejected an offer to sell the 1998 Durango and that the unpaid bank draft was issued to repay GAC for wrongfully drafted funds. This characterization of the transaction would fall outside of the coverage of the surety bond. *See MRD*, 47 S.W.3d at 726.

7

It is undisputed that Lifta was paid for the vehicle, title was transferred to GAC, and that the vehicle was delivered to GAC. The only witness to testify at trial regarding the transaction was GAC's president, Mitchell Deane. Deane recounted discovering that his secretary inadvertently picked up a sight draft for the 1998 Dodge Durango and that the vehicle was in his possession. He then testified that he contacted Lifta and arranged for them to "repurchase" the vehicle. The trial judge's finding that the judgment was based on the failure to pay a valid bank draft issued to "buy a motor vehicle" necessarily implies a repurchase. Any impeachment evidence and argument adduced by Old Republic at trial characterizing the transaction as a rejection and repayment of wrongfully drafted funds could have been reasonably discounted by the trial judge based on Deane's testimony that the sale was a repurchase. We will not interfere with the trial judge's resolution of conflicting evidence or credibility judgments. *See Benoit*, 239 S.W.2d at 796. Our review of the record shows that reasonable minds could conclude that the evidence presented at trial demonstrated that Lifta's bank draft was issued to buy a motor vehicle, and therefore was within the conditions of the surety bond. We hold that the evidence at trial was sufficient to support the trial court's judgment in favor of GAC. We overrule Old Republic's second issue.

**Attorney's Fees**

In its third issue, Old Republic contends that the trial court erred in relying on GAC's expert testimony regarding attorney's fees because GAC failed to provide its counsel's time records at trial and that the evidence was legally and factually insufficient to support the trial court's award of $10,299.22 in attorney's fees based on a 40 percent contingency fee.

Old Republic filed a pretrial motion to exclude the expert testimony of GAC's counsel because he failed to provide records documenting the time counsel spent on the representation in response to a discovery request. The trial judge heard argument in which counsel for Old Republic explained that, without the time records, they could not prepare their expert to testify whether the fees were reasonable and necessary. Counsel for GAC explained that he was seeking a contingent fee and that the time records would not be relevant to the contingent fee. The trial judge denied the motion.

We review a trial court's denial of a motion to exclude testimony on an abuse of discretion standard. *See Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 766, 781 (Tex. App.—Austin 1999, pet. denied) (trial court did not abuse its discretion in finding good cause to allow testimony despite incomplete disclosure by witness). GAC provided Old Republic with a summary of the substance of the expert testimony regarding attorney's fees prior to trial. The facts contained in GAC's pretrial disclosure were consistent with the testimony presented at trial. The trial judge may reasonably have concluded that GAC's pretrial disclosure of the subject matter of its expert testimony provided adequate opportunity for Old Republic to learn the substance of the expert's testimony. *See id.* Furthermore, Old Republic chose not to avail itself of the opportunity to cross-examine GAC's expert which might have provided sufficient information regarding the time GAC's counsel spent working on the case or inconsistencies in the summary provided. *See id.* (noting that cross-examination allowed opportunity to test expert opinion). We find that the trial judge did not abuse its discretion in allowing GAC's attorney's fees expert to testify.

Old Republic's failure to challenge the reasonableness of the claimed contingency fee at trial also disposes of its sufficiency challenge. Although GAC's trial counsel's testimony was brief, he discussed the factors for determining the reasonableness of a contingency fee and explained the application of the factors to the case. *See Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).[3] As appellee urges, trial counsel's clear, positive, direct, and uncontroverted testimony concerning attorney's fees is taken as true as a matter of law. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990); *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 684 (Tex. App.—Fort Worth 1998, pet. denied). The failure of

---

[3] In *Arthur Anderson*, the court adopted the factors set out in the Texas Disciplinary Rules of Professional Conduct for determining the reasonableness of a contingency fee. *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyer's performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

*Id*.

GAC's counsel to provide time records did not prevent Old Republic from presenting testimony regarding the various factors discussed in *Arthur Anderson*. Based on the uncontroverted testimony of GAC's trial counsel, we find that there is sufficient evidence to support the trial court's award of attorney's fees. We overrule Old Republic's third issue.

## CONCLUSION

We overrule appellant's issues and affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B.A. Smith and Patterson

Affirmed

Filed:  January 8, 2004

11