# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00196-CV

**Thomas Jackson Wilson, II, Appellant**

**v.**

**Deborah Fleming Wilson, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 20538, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Thomas Jackson Wilson, II (Wilson) appeals from the property division in his divorce from Deborah Fleming Wilson (Fleming).[1] Wilson brings two issues on appeal: the trial court erred by mischaracterizing certain property and erred in its property division because it was not just and right. We will affirm the trial court's judgment.

### Factual and Procedural Background

Wilson and Fleming were married in October 1993 and ceased living together in December 2000. There were no children of the marriage. Along with two siblings, Wilson owned a one-third undivided interest in a 59.60-acre tract of land in Burnet County. After Wilson and

---

[1] Deborah Fleming Wilson's name was restored to Deborah Fleming in the divorce decree.

Fleming married, Wilson's siblings wanted to sell some of the land to finance a business. Wilson and his two siblings entered a transaction that resulted in the conveyance to Wilson and Fleming of 42.91 acres (the "ranch property"); they used Fleming's separate-property cash as a down payment to finance the purchase of additional acreage, more than what would have constituted Wilson's one-third share.[2] An existing cottage was on the land they purchased; it was later improved and used as a bed and breakfast. A new house was later constructed on the tract.

During the marriage, Wilson and Fleming also purchased acreage on the Llano River, known as "Lot 14." Lot 14's characterization as community property is not disputed. A second lot on the Llano River, "Lot 13," was jointly owned by Wilson and his former wife, Bobbye Wilson. Wilson and Fleming paid Bobbye Wilson cash for that property, using a combination of Fleming's separate property cash and a loan to the community. Wilson disputed the characterization of Lot 13 as community property.

Another disputed asset in the property division was a retirement account. Before marriage, Fleming owned a retirement account from her employment. The funds were rolled over to open Northwestern Mutual Life Account 12893254 ("the retirement account") immediately after Wilson and Fleming were married. The rollover resulted in the acquisition of 5856.05 "units."[3]

---

[2] The transaction is a little muddled. The parties refer to a "Tract B" and a "Tract C," which appeared only to come into existence as a result of this transaction, but both comprised the conveyance to Wilson and Fleming.

[3] The parties do not define what constitutes a "unit."

2

During the course of the marriage, an additional 8239.90 units were acquired, resulting in a total of 14095.95 units.

At trial, Fleming presented both documentary and testimonial evidence, including her proposed property division. The parties stipulated to the value and characterization of all property, except for the characterization of these three assets: the ranch property, Lot 13, and the retirement account. The court's judgment confirmed all stipulations, characterized all disputed assets as community property, and awarded the property as requested in Fleming's proposed property division. The court made findings of fact and conclusions of law.

## Discussion

### Standard of Review

Findings of fact made in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *Zisblatt v. Zisblatt*, 693 S.W.2d 944, 949 (Tex. App.—Fort Worth 1985, writ dism'd w.o.j.). As the trier of fact in a bench trial, the court determines the credibility of the witnesses and the weight to be given their testimony, whether to believe or disbelieve all or any part of the testimony, and how to resolve any inconsistencies in the testimony. *Robbins v. Roberts*, 833 S.W.2d 619, 624 (Tex. App.—Amarillo 1992, no writ). We may not interfere with the fact finder's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony. *See Benoit v. Wilson*, 239 S.W.2d 792, 796-97 (Tex. 1951). When there is conflicting evidence, the appellate court usually regards the finding of the trier of fact as conclusive. *See Jauregui v. Jones*, 695 S.W.2d 258, 263 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

3

We review the sufficiency of the evidence supporting findings of fact under the same standards we apply to jury findings. *See Zisblatt*, 693 S.W.2d at 949. When the burden of proof at trial is by clear and convincing evidence, we consider all of the evidence and determine whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established. *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex. App.—El Paso 2000, no pet.).

*Characterization Disputes*

In his first issue, Wilson contends that the trial court erred in mischaracterizing the ranch property as community property because it was his separate property. The court partitioned the 42.91 acres of the ranch property, awarding a separate 21.45-acre tract to each party. Fleming received the tract with the new house, Wilson the tract with the cottage.

Property possessed by either spouse on dissolution of the marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 1998); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied); *Kiel v. Brinkman*, 668 S.W.2d 926, 929 (Tex. App.—Houston [14th Dist.] 1984, no writ). That presumption can be overcome by clear and convincing evidence that the asset is one spouse's separate property. Fam. Code § 3.003(b); *Ganesan*, 96 S.W.3d at 354. The spouse claiming separate property must clearly identify the property claimed to be separate. *Ganesan*, 96 S.W.3d at 354; *Robles v. Robles*, 965 S.W.2d 605, 614 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975)).

4

An undivided possessory interest in property is a tenancy in common. *Rittgers v. Rittgers*, 802 S.W.2d 109, 113 (Tex. App.—Corpus Christi 1990, writ denied). Only through partition can a tenancy in common vest in each owner a sole estate in a specific portion of land. *Dierschke v. Central Nat'l Branch of First Nat'l Bank*, 876 S.W.2d 377, 379 (Tex. App.—Austin 1994, no writ).

The ranch property was jointly owned by Wilson and his siblings before Wilson and Fleming's marriage. There is no deed in the record showing that Wilson had any sole interest in any specific tract out of the 59.60 acres jointly owned by the siblings. Although Wilson held his tenancy in common before marriage, there was never a partition by the siblings so Wilson could not claim an identifiable separate estate in any distinct tract. Wilson and Fleming acquired 42.91 specific acres after their marriage. No reservation is made in the deed that the property is Wilson's separate property. Fleming testified that the intent was to convey the property to the community and to build a home there. In making this acquisition, Wilson contributed the value of his tenancy in common and Fleming used her separate funds to make the down payment; the loan was a community debt. According to Fleming, this arrangement allowed the community to acquire more acreage, resulting in their ownership of a total of 42.91 acres. Wilson disagreed, testifying that Fleming's name was on the deed only as a "formality" to obtain financing.

The court was not compelled to believe Wilson's testimony concerning the intent of the parties. *See Robbins*, 833 S.W.2d at 624 (court determines credibility of witnesses). The court was entitled to resolve conflicts in the evidence. *See Benoit*, 239 S.W.2d at 797. Thomas did not, by clear and convincing evidence, overcome the presumption that the property acquired during

5

marriage in both parties' names belonged to the community. *See Ganeshan*, 96 S.W.3d at 354. The court could consider that both parties contributed separate property to acquire land held in both their names, on which they intended to build their home. Accordingly, the court did not err in its characterization of the 42.91 acres as community property.

In his second issue, Wilson contends that the property known as Lot 13 was his separate property.[4] The same analysis applies to this property. Wilson owned an undivided interest in Lot 13 with his former wife. After his marriage to Fleming, the property was conveyed to both Wilson and Fleming. Again, the transaction involved the contribution by Wilson of an undivided interest in property, along with Fleming's contribution of separate property cash, in order to purchase for the community a particular tract of land. We hold that the court did not err in its characterization of Lot 13 as community property.

In his second issue, Wilson also contends that the trial court mischaracterized the retirement account as Fleming's separate property. In fact, neither the court nor Fleming's proposed property division characterized all of this account as separate property. Fleming's proposed property division stated that this account had commingled funds from pre-marriage and post-marriage. Fleming's documentary and testimonial evidence showed, and the trial court found, that the account started with 5856.05 units that were traced to her separate property, and that 8239.90 units were added due to Fleming's employment during the marriage. The court found 5856.05 units to be

---

[4] The opinion will first discuss all characterization issues, then address the property division.

Fleming's separate property; the remainder of the retirement account was characterized as community property. The total value of the account was $68,940.12. Fleming's separate property portion of the account was 41.54% (5856.05/14095.95) and the community property portion of the account was 58.46% (8239.90/14095.95). Wilson produced no evidence to controvert Fleming's tracing and accounting for the amount of the fund's growth. The court did not err in its characterization of this account as partially Fleming's separate property and partially community property.

Wilson further argues that Fleming violated her fiduciary duty to him. He contends that she handled all the books and took advantage of him in these transactions. However, Wilson testified that he knew the deeds were conveying the property to himself and Fleming. He also testified that he had a power of attorney from Fleming with regard to the real property transactions. Wilson did not produce evidence to show fraud or breach of fiduciary duty on Fleming's part. *Cf. In re Moore*, 890 S.W.2d 821, 832 (Tex. App.—Amarillo 1994, no writ) (unauthorized transfer by one spouse of community property to third parties and to that spouse's separate property estate). We overrule appellant's first issue and those parts of his second issue attacking characterization of the property.

### *Just and Right Property Division*

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the court "deems just and right." Tex. Fam. Code Ann. § 7.001 (West 1998). Although the trial court does not have to divide the community property equally, its division must be equitable. *Zieba v. Martin*, 928 S.W.2d 782, 790 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Schuster*

7

*v. Schuster*, 690 S.W.2d 644, 645 (Tex. App.—Austin 1985, no writ). The trial court's discretion is not unlimited, and there must be some reasonable basis for an unequal division of the property. *Zieba*, 928 S.W.2d at 790. The trial court, in exercising its discretion, may consider many factors, including the parties' earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *Walston v. Walston*, 971 S.W.2d 687, 691 (Tex. App.—Waco 1998, pet. denied).

We review the trial court's division of property using an abuse of discretion standard. *Murff*, 615 S.W.2d at 700; *Walston*, 971 S.W.2d at 691. Legal and factual sufficiency are not independent grounds of error but relevant factors in assessing whether the trial court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). To constitute an abuse of discretion, the property division must be manifestly unfair. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980).

In his second issue, Wilson contends that the trial court abused its discretion by ignoring the great weight and preponderance of the evidence as to what would constitute a just and right property division. Wilson presents two "scenarios" that depend on manipulating the value of the property to demonstrate that the trial court erred in its division of property. On the record at trial, the court found that the parties stipulated to the value and character of the property and debts as set out in Fleming's proposed property division, with the exception of the characterization of the ranch property, Lot 13, and the retirement account. Accordingly, we cannot re-value the property on

8

appeal, nor consider newly proposed values to conclude that the trial court abused its discretion in the property division.

Appellee argues that the court failed to consider certain factors, such as an affair that Fleming had. The court, as the trier of fact, was entitled to credit the parties' testimony regarding this issue as well as the evidence on the issue of abuse.[5] Wilson also argues that he had less income and earning capacity than Fleming. However, the court took that into consideration by assigning Fleming the major share of the community debts and awarding her the portion of the ranch property with the larger encumbrance. The trial court could have considered Fleming's contributions of separate property funds for the purchase of the real property and her testimony that she had been servicing all community debt on all property, paying all other community expenses, and paying for Wilson's alcohol rehabilitation programs during the marriage. With regard to the ranch property, Wilson received the tract with a cottage that had been improved and used as a bed-and-breakfast, having the smaller debt, while Fleming received the newer, larger house with the greater debt. Each received one lot along the Llano River. Wilson received the larger share of certain personal property, such as trucks and boats. The final property division of net assets resulted in Fleming receiving 54.14% of the net assets and Wilson receiving 45.86% of the net assets—not a gross disparity. Ultimately, Wilson has not demonstrated that the court's property division was manifestly unfair. *See Mann*, 607 S.W.2d at 245. Accordingly, he has not shown that the trial court abused its discretion in the property division. We overrule appellant's second issue.

---

[5] The judgment contains a permanent injunction prohibiting Wilson from causing or threatening to cause bodily injury to Fleming, communicating with Fleming, or coming within five hundred feet of her (except within the confines of his real property awarded in the divorce).

9

## Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: March 18, 2004