BOWLING, JAMES & BELL *v.* STATE.

5-1594                                        316 S. W. 2d 343

Opinion delivered October 6, 1958.

*Bryan J. McCallen* and *Claude F. Cooper,* for appellant.

*Bruce Bennett,* Atty. General and *Bill J. Davis,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. The question in this case is whether, under the facts hereinafter enumerated, the State of Arkansas was entitled to forfeiture on the bond of James A. "Dock" Bowling, said bond having been executed by appellants, Russell James and Earl Bell, along with Bowling.

Appellant Bowling was arrested in the Western District of Clay County on a charge of possessing stolen goods, and was released upon making bail in the sum of $5,000, said bond being executed by appellants James and Bell. Upon his release, Bowling left Clay County, and went to his home in Missouri. The trial was set for January 21, 1957, but was continued and reset for April 22, 1957, due to the illness of one of Bowling's attorneys. Prior to the new date for trial, Bowling was arrested in Missouri on a fugitive warrant from Arkansas (relating to a different charge from the one for which the bond had been executed), and refused to waive extradition. Subsequently, he was charged with Burglary and Larceny in Dunklin County, Missouri, and with Receiving Stolen Property in Pemiscot County, Missouri. On April 22nd, when Bowling's case was set for trial in Clay County, said appellant was in the Dunklin County jail at Kennett, Missouri, having failed to make a $2,000 bond.[1] Forfeiture on the bond in the Clay County case was declared by the court, but the cause was set for hearing on June 10, 1957, for appellants to show cause why said bond should not be forfeited. Following a continuance until July 1st, the court ordered, after a hearing, that the forfeiture should not be set aside, and entered judgment for the State of Arkansas against appellants,

---

[1] Also, a holdover warrant had been placed with Dunklin County by the sheriff of Pemiscot County relating to the Receiving Stolen Property charge.

both jointly and severally, in the sum of $5,000. From such judgment comes this appeal.

For reversal of the court's judgment, appellants first assert that the bond should not have been forfeited because "it was no fault of the principal in said bond, or his bondsmen, that the principal did not appear for trial on the 22nd day of April, 1958," and secondly, that the bondsmen were excused for the appearance of the principal of this bond by reason of an act of law.

The bondsmen contend that they did everything within their power to have Bowling present in Clay County on the day of the trial. The record reflects that the sheriff of Dunklin County was contacted by James, in an effort to persuade the sheriff to permit Bowling to return to Clay County for trial. Vester Robinson, a resident of Frisbee, Missouri, at the request of James, talked with the sheriff, and the judge of Dunklin County, in an attempt to get Bowling released, but was also unsuccessful. A like request was made of the sheriff and prosecuting attorney of Pemiscot County by Clyde Maloney of Pascola, Missouri, and J. B. Light of Haiti, Missouri. According to appellant James, Bowling was willing to return to Clay County, stand trial, and return to Dunklin County for trial if acquitted in Arkansas; if convicted in Arkansas, Bowling had agreed to voluntarily go back for trial after serving his sentence.

Admittedly, a bail bond was fixed, as prescribed by law, by the Missouri authorities, prior to the forfeiture taken in the Circuit Court of Clay County. Appellants state that this bond was not made because Sheriff Scott of Dunklin County stated that if Bowling made the bond, another charge would be filed against him. According to witness Robinson, "he said he was going to keep him. Said, 'Yes, if you want to make a bond to release him, but there will be others.' " That he "* * * would file on him as fast as he would get loose, be $6,000 in bonds to get him over here."[2]

---

[2] Sheriff Scott stated he told those who inquired about the bond, that though it were made, he would still have to turn Bowling over to the Pemiscot County sheriff, because of the holdover warrant. Bond in the Pemiscot County case had been set at $4,000.

It is argued that the Missouri officials held Bowling in jail without just cause, and that his rights under the Missouri constitution, relative to bail, were violated. Suffice it to say that we have no jurisdiction of the Missouri counties, nor any control over the action of their authorities; however, we certainly see nothing unreasonable in the sheriff's refusal to permit Bowling to leave without first making proper bond to assure his return to Missouri. No application for a writ of *habeas corpus* was made by appellants' counsel, nor was any bond offered. Likewise, Bowling refused to waive extradition on the second warrant from Arkansas. Appellants' position is unsound principally, however, for the reason that the bondsmen made no attempt to keep the principal within the jurisdiction of the state of Arkansas. Upon the making of the bond, Bowling, without any protest from his bondsmen, as far as the record shows, forthwith went to Missouri. In becoming sureties on the bond, James and Bell, of course, assumed the risk of Bowling's failure to return to Clay County for trial. A bondsman may well consider, when executing bail, many factors that might prevent the return of the principal, *viz.*, the general character and reputation of the defendant, the seriousness of the charge against him, the probabilities or improbabilities of successful prosecution, and the possibility of the principal becoming involved in further trouble, as happened in this instance.

As authority for their contention that the bond should not have been forfeited, appellants cite the case of *Belding* v. *State,* 25 Ark. 315. That case is readily distinguishable from the instant cause. In the *Belding* case, the federal government arrested the principal within the state of Arkansas; furthermore, there was only a provisional civil state government at the time, which was subject to military authority. In the litigation before us, appellant *voluntarily* left this state, thus depriving Arkansas of its jurisdiction over him.

While there are a few cases to the contrary, the general rule is that in order for a surety to be discharged on his bail bond for the reason of an act of law, the act

of law must be operative and obligatory *in the state where the bond is given.* As stated in American Jurisprudence, Volume 6 (Revised), page 133, paragraph 174:

"Generally, sureties on a bail bond or recognizance are excused, and a judgment of forfeiture will be vacated, where fulfillment of the requirements of the bond is prevented by an act of law. An example of an act of law discharging the sureties on a bail bond or recognizance is the abolition of the court in which the accused is obligated to appear. However, an act of law which will relieve the sureties as a matter of right must be an act of law operative in the state where the obligation was assumed, and obligatory in its effect upon her authorities."

In the Re-statement of the Law of Security, page 559, paragraph 207, we find:

"Where at the time for the principal's appearance he is in custody in another state, the surety on his bail bond is not discharged unless the principal has been delivered to the other state by action of the first state, or removed there by federal authority."

The following comment is made:

"The surety, having custody of the principal, should prevent his leaving the jurisdiction. If the principal nevertheless leaves, and is arrested in another state, the surety remains liable on his bond. If, however, the principal has been surrendered to another state, either as the result of extradition or by the voluntary action of the officers of the jurisdiction in which the bond has been executed or has been removed by federal authority to another jurisdiction, the surety has a defense because the non-appearance of the defendant is due to the state itself or to another authority which the surety cannot oppose."

The same view was taken by this Court in *Adler* v. *State,* 35 Ark. 517, wherein Chief Justice ENGLISH, speaking for the Court, said:

"Imprisonment of the principal for crime, therefore, will generally release the bail, the state having taken him out of their possession; and so will the surrendering of him to the authorities of another state as a fugitive from justice. But if they permit him to go into another jurisdiction, and there he is arrested and imprisoned, they will not be released; for they should have kept him within his and their own state."

The Chief Justice then commented on the *Belding* case, (heretofore mentioned as being largely relied upon by appellants), as follows:

"*Belding* v. *The State,* 25 Ark. 315, the only case cited by counsel for appellants to sustain the defense set up in the third paragraph of the answer, is not in point. There the principal in the recognizance was seized by the military authorities of the United States of this department, and imprisoned in Little Rock, and then sent to Vicksburg and imprisoned there, and so prevented, without the fault of the surety, from appearing in the circuit court of Hot Spring county, at the September term, 1867, to answer an indictment, as required by the condition of the recognizance; and this was held to be a valid defense for the surety. There the principal was not prevented from appearing by the act of the obligee in the recognizance (the state), but by a force claiming to act under authority of the federal government, which neither the state nor the surety could control."

It appearing that appellants, under the law, are not entitled to the relief sought, the judgment of the Circuit Court is, in all things, affirmed.