

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| SENECA INSURANCE CO., INC., | | No. 08-14-00101-CV |
| DBA EYDIE'S BAIL BONDS, | § | |
| THROUGH VICTOR BURGESS, | | Appeal from |
| AGENT, | § | |
| | | 431st District Court |
| Appellant, | § | |
| | | of Denton County, Texas |
| v. | § | |
| | | (TC # 14-01058-431) |
| KALVIN DAVON ROSS, | § | |
| | | |
| Appellee. | § | |

**O P I N I O N**

Seneca Insurance Company challenges a judgment which requires it to return a $750 bail bond premium. It pitches the case as an opportunity to interpret as a matter of first impression what the Legislature intended by the phrase "reasonable cause" under Section 1704.207(c) of the Texas Occupations Code. That clause governs the standard under which a trial court might require a bail bond surety to return all or a part of a bond premium when the bonding company surrenders a criminal defendant. TEX.OCC.CODE ANN. § 1704.207 (West 2012). And while it is tempting to wade into this novel question of statutory interpretation, aided by the excellent briefing of the parties, for the reasons set forth below we resolve the appeal on a much more mundane ground.

# FACTUAL SUMMARY

Some of the facts of this case are fairly straightforward, but some are disputed. Kalvin Ross was charged with felony assault along with two other misdemeanor charges.[1] The two misdemeanor charges were assigned to a County Criminal Court, while the felony charge found its way to the 431st District Court for Denton County.[2] On September 23, 2013, after being arrested and finding himself in jail, Ross called Eydie's Bail Bonds (referred to as Seneca throughout the rest of the opinion). Seneca agreed to post three bonds, in the total amount of $15,000, to obtain his release on the three cases.

Seneca charged Ross $1,500 as the premium on the three bonds. Ross initially agreed to pay $700 down and pay the additional $800 by the end of three months. This arrangement was documented by a written agreement reflecting these terms. Ross signed a one page form contract stating the total premium as $1,500 for the "bond or bonds." An application form, which Ross also signed, notes that of the $1,500 total premium, $700 had been paid and $800 was to be paid within three months.

Ross, who was not working at the time, verbally agreed about a month later to pay $100 every two weeks towards the balance of the premium. He contends, however, that he could not meet that repayment schedule, and was told by a collector from Seneca to do what he could. He, or persons on his behalf, paid $75 on November 14, 2013; $100 on November 15, 2013, and $80 on January 8, 2014. His payments thus totaled $955 towards the $1,500 bond premium.

---

[1] The assault in this case was indicted as a felony because it was alleged to be against a family member and involved some manner of choking. TEX.PEN.CODE ANN. § 22.01(b)(2)(B)(West Supp. 2015). The details of the misdemeanor charges are not before us, but apparently involve unlawful restraint and interference with making a report to 911.

[2] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* TEX.R.APP. P. 41.3.

On January 24, 2014 Seneca filed an "Affidavit of Surety to Surrender Principal" executed by its agent Victor Burgess, in which it claimed: "The Defendant has failed to pay the fee as required. I fear I cannot produce him for court." As a consequence, a capias was issued on January 30, 2014, to arrest Ross. Ross appeared before the 431st District Court on January 31, 2004. Bail was again set at $7,500. The court appointed counsel for Ross after finding him to be indigent. The court then set a show cause hearing to determine if the "reasonable cause" claimed by Seneca in its January 24, 2014 affidavit was in fact reasonable.

At the hearing, Ross, Victor Burgess, and his wife, Eydie Burgess, all testified. Victor Burgess, who signed the surrender affidavit, claimed he was concerned about whether Ross would appear for his court hearings based on the non-payment, the fact Ross had not called in regularly to Seneca while out on bond, and because he had once gone to Waco while out on bond. In his words, "[o]ur experience has been when people don't pay their fees as agreed in a timely fashion and they don't call in on a regular basis, that they don't -- they frequently do not show up for court." But Victor Burgess had no personal knowledge to support his claim that Ross had not called in and conceded there was nothing improper about Ross going to Waco.

Ross testified in substance that he agreed to the $1,500 bond premium, that he made the initial down payment and some payments, but because he was looking for work he could not pay the balance. About a month after his release, he reached an agreement over the phone with a Seneca employee named "Abe" to pay $100 every two weeks. He admitted not paying the entire balance of the bond premium, or making the $100 payment every two weeks. But he contended he was told by Abe to "do what I could" and "just make payments the best you can." Ross had court dates on January 17, 21, and 28, 2014 and appeared on all of those dates.

Eydie Burgess, the manager for Seneca, also testified. She verified that three bail bonds were issued by Seneca, one for $7,500 on the felony charge, and two bonds in the amounts of $5,000 and $2,500 for the misdemeanor counts. The premium on the $7,500 bond was $750. Seneca internally allocated any payments pro-rata towards the three bonds in the sense that until they were all paid in full, none was individually paid. Thus while a total of $955 had been paid by Ross, Seneca considered that no one bond premium had been paid in full.

She also contended that Ross was not surrendered just because of money. Rather, she contended the failure to pay the bond premium was an indicator of his potential flight risk:

> Q. [By the Court] Would you agree with me that the surrender was more about the money than fear that he wasn't going to show up for court?
>
> A. Not -- no. I do not surrender people just to collect money.
>
> . . .
>
> Q. And understand my question. My question wasn't, was it only the money; my question was, wasn't it more the money that concerned you than the fact that you feared he would not appear in court?
>
> A. No.
>
> . . .
>
> Q. Nonpayment is a civil contract issue and it can be handled separately. And I agree with you, a bondman's primary concern should not be surrender because I'm not getting paid. It should be surrender because I don't think they're going to show up and I don't want to be on the hook.
>
> A. I agree.

We understand these witnesses to claim that the combination of there being some difficulty in reaching Ross, plus the fact that many people who do not pay their accounts also miss court dates, created an apprehension that Ross might not appear. Seneca claims this insecurity justified it filing an affidavit on January 24, 2014. But the trial court had problems understanding how this claimed insecurity suddenly arose after January 17, 2014 when Ross had

4

timely appeared for a court setting, but before his next scheduled hearing date on January 31, 2014.[3]

At the conclusion of the hearing the trial court indicated that there was no reasonable cause to surrender Ross:

> THE COURT: I do find that this contested surrender was without reasonable cause. I'm going to also state that while other findings of fact and conclusions of law certainly are possible if someone requests them, that it doesn't matter, quite frankly, whose burden it is, because regardless of whether I impose that burden on Mr. Ross or on your client, I think the evidence is pretty clear that there is not reasonable cause for surrender in this case.
>
> .    .    .
>
> I don't believe that an affidavit filed with the Court should be made disingenuously, and I think this one was. I don't think there was any good faith basis whatsoever to claim there was fear that he would not appear in court when he had been in court three days before and seven days before this affidavit was filed. The evidence, as I see it, indicates that this was about money and nothing else. And courts are simply not expected to be, nor should they be expected to be, collection agents for attorneys or bail bondsmen. That's my finding. I'll enter an order consistent with it.

The trial court later signed an order stating that Seneca's surrender of Ross was without reasonable cause, "in that the reasons stated in the *Affidavit of Surety to Surrender Principal* and filed on that date were not supported by the evidence presented at the hearing." The order required Seneca to refund the $750 premium to Ross, and severed this part of the case into a separate proceeding so that it would become the final judgment of the trial court.

## THE RELEVANT STATUTORY PROVISIONS

When a surety (the bail bonding entity) signs on to a bail bond, it assumes a monetary risk if the principal (the criminal defendant who bonded out) fails to appear. *See e.g.* TEX.CODE CRIM.PROC.ANN. art. 17.08(1),(2)(West 2015); *Bowling v. State*, 229 Ark. 441, 444, 316 S.W.2d

---

[3] The record also shows that after Ross was surrendered, Seneca wrote a new bond to get him out of jail. Before doing so, it required Ross's relatives to pay off the $545 balance on the old bonds, and pay the premiums on the new bonds for the misdemeanors because the bond amounts on those charges had been increased.

5

343, 344 (1958); *State v. Honey*, 165 Neb. 494, 497, 86 N.W.2d 187, 189 (1957). At early common law, the surety had nearly unlimited rights to seize and surrender the principal back to the authorities. *See Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 371-73 (1872). Under the Texas Code of Criminal Procedure, the surety can end its financial liability on the bond by physically surrendering the principal back into the custody of the authorities, or appropriately notifying the authorities where the principal is otherwise incarcerated, or filing an affidavit stating the cause of surrender with information sufficient to allow for an arrest warrant to be issued. TEX.CODE CRIM.PROC.ANN. art 17.16 (a)(1)(2) and art. 17.19 (a).

Because any re-arrest could obviously work a hardship on the principal, later case law accorded the principal a civil cause of action for breaching the bail bonding agreement. *Ex Parte Vogler*, 495 S.W.2d 893, 894 (Tex.Crim.App. 1973)(so stating in dicta); *Karakey v. Mollohan*, 15 S.W.2d 692 (Tex.Civ.App.--El Paso 1929, no writ). The Legislature also provided a quicker and less cumbersome remedy, albeit one with a limited recovery. *See McConathy v. State*, 545 S.W.2d 166, 168 (Tex.Crim.App. 1977). Under TEX.OCC.CODE ANN. § 1704.207 (2), a surety can accomplish a surrender by filing an affidavit in the proper court which among other things, identifies the defendant, the case, the bond, and states the "reason for the intended surrender." *Id*. But if the principal, the principal's attorney, or even the State's attorney determines that the surrender "was without reasonable cause" they may contest the surrender before the court. *Id*. at § 1704.207(b). If the court finds the surrender was without reasonable cause, the court may order a return of all or part of the fees paid to secure the bond. *Id*. at § 1704.207 (c). The statute does not define the term "reasonable cause" and no Texas case has undertaken to define the term in the context of this statute.

**STANDARD OF REVIEW**

The parties contest whether we should review the trial court's ruling for an abuse of discretion or *de novo*. Ross favors abuse of discretion review, and Seneca contends this case turns on statutory construction of the phrase "reasonable cause" under Section 1704.207(c), which is pure question of law. We believe there is a third option.

This case comes before us without the benefit of formal findings of fact and conclusions of law. In the absence of findings and conclusions, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *Lassiter v. Bliss*, 559 S.W.2d 353, 356 (Tex. 1977); *Rivas v. Rivas*, 452 S.W.3d 49, 56 (Tex.App.--El Paso 2014, no pet.). The trial court's judgment implies all findings of fact necessary to support it. *Wood v. Texas Dept. of Public Safety*, 331 S.W.3d 78, 79 (Tex.App.--Fort Worth 2010, no pet.); *Doe v. Tarrant County Dist. Attorney's Office*, 269 S.W.3d 147, 151 (Tex.App.--Fort Worth, 2008, no pet.); *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex.App.--Fort Worth 2008, no pet.). But with the benefit of a reporter's record, these implied findings are not conclusive, and may be challenged for the sufficiency of the evidence to support them. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Estate of Rhea*, 257 S.W.3d at 790. Traditional review standards for the sufficiency of the evidence determine whether those implied findings can stand. *Tarrant County Dist. Attorney's Office*, 269 S.W.3d at 151. When the findings involve mixed questions of law and fact, we review the findings under an abuse of discretion standard, deferring to the fact findings if supported by the evidence, but considering the legal determinations *de novo*. *Becton Dickinson and Co. v. Usrey*, 57 S.W.3d 488, 493 (Tex.App.--Fort Worth 2001, no pet.).

A trial court's oral pronouncements purportedly explaining its decision cannot be substituted for non-existent findings of fact and conclusions of law. This rule is often traced to *In re W.E.R.*, 669 S.W.2d 716 (Tex. 1984) which held that a court of appeals was not entitled to look to the trial court's comments at the conclusion of a bench trial as a substitute for findings of fact and conclusions of law. *Id.* at 716. This rule has been applied any number of times since. *In re Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002)(application to hearing on bypass of parental notification); *In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 889 (Tex.App.--El Paso 2012, no pet.)(judge's rationale from bench on forum non-conveniens motion was not substitute for findings of fact, conclusions of law, court may have had other rationales); *Spiers v. Maples*, 970 S.W.2d 166, 169-70 (Tex.App.--Fort Worth 1998, no pet.)(trial court comments were not substitute for findings of fact, conclusions of law); *In Interest of W.S.*, 899 S.W.2d 772, 780 (Tex.App.--Fort Worth 1995, no pet.)(same).

The rule also seems particularly applicable here. The trial court's statement as quoted above supports one possible rationale for refunding the premium: Seneca's claim that non-payment of the premium proved a risk of flight was a pretext. But other statements found elsewhere in the record suggest alternate rationales. The trial court was concerned with how Seneca internally accounted for the partial payments, such that the bond in one or the other court could have been deemed fully paid with a different accounting method. The trial court expressed concern with the lack of clear documentation of the terms of the contract in light of the verbal modification of the payment schedule. The trial court's invitation for one of the parties to request findings of facts and conclusion of law itself expressly suggests that the court could have other rationales ("while other findings of fact and conclusions of law certainly are possible if someone requests them . . . .").

8

We also note that the one case applying the predecessor to Section 1704.207 reviewed the trial court's finding of no reasonable cause for evidentiary sufficiency. In *Robbins v. Roberts*, 833 S.W.2d 619 (Tex.App.--Amarillo 1992, no pet.), a surety challenged a judgment requiring it to refund part of a bond premium; the trial court had found the surety's claim that it felt insecure was not reasonable in light of the particular facts of the case. *Id*. at 623. That finding was reviewed for the sufficiency of the evidence to support it. *Id*. We think the trial court's findings (here implied) should be reviewed under the same standard. *See also Allegheny Cas. Co. v. State*, 163 S.W.3d 220, 224 (Tex.App.--El Paso 2005, no pet.)(findings of fact would have been called for in bond forfeiture proceeding and their absence required court to presume all necessary implied findings which were reviewed for legal sufficiency).

**ANALYSIS**

While Seneca frames the sole issue in this appeal as whether Ross's failure to pay the bond premium can constitute "reasonable cause" under Section 1704.207(c), we see the issue as whether there was sufficient evidence to support any possible implied finding supporting the judgment.

Viewed in that light, there are a number of possible grounds supporting the judgment. First, the surrender affidavit contended that Ross had not paid the premium as agreed. But there was some evidence that the written agreement was replaced with a new and different payment schedule. This was not a case with a definitive written contract with a defined payment schedule and an integration clause foreclosing consideration of oral statements. It was a single page form contract that only stated the total amount of the premium. One had to look to an application form which stated the amount of the down payment and the remaining balance. The payment term of $100 every two weeks is handwritten on a receipt, made over a month later, and given to

9

a different person from Ross. Seneca acknowledged that there had been a modification of the original payment term. The person supposedly making the modifications on behalf of Seneca did not testify. There was some evidence from which the trial court could have simply found that the premium bill was not delinquent.

"There is nothing more horrible than the murder of a beautiful theory by a brutal gang of facts."[4] Seneca's theory here is that the failure to pay the bond premium, in and of itself, should be a reasonable cause under Section 1704.207(c) of the Texas Occupations Code. The brutal gang of facts is the testimony from its own witnesses that made risk of flight, and not non-payment, the salient issue. While Seneca's witnesses agree that Ross did not pay the bond premiums, they claimed the significance of that non-payment was that Ross became a flight risk. That is, they claimed that someone who does not pay the bond premium is more likely to not appear in court. Eydie Burgess specifically claimed the company did not surrender people just for money. In this way, Seneca made the issue before the trial court the risk of flight, and not simply the non-payment of the bond premium. As to risk of flight, however, there was some evidence that Ross attended every court date and that he stayed in contact with Seneca to make himself available for future dates. In other words, there was evidence that the non-payment did not make him a greater flight risk, and because Seneca seemed to agree that risk of flight was the issue, there was evidence in the record from which the trial court could have found that claim unreasonable.

We emphasize that Seneca's witnesses did not claim below that the simple fact of Ross's non-payment of the bond premium *per se* justified his surrender. Had they done so, we might have to squarely decide whether "reasonable cause" under Section 1704.207(c) includes a

---

[4] Francois La Rochefoucauld [1747-1827] quoted in David S. Shrager and Elizabeth Frost, *The Quotable Lawyer* 109 (1986).

principal's material breach of the bonding agreement by non-payment. In overruling Seneca's Issue One, we leave for another day that question of law. Nor are we required to decide the ancillary issue raised by the parties of who carries the burden of proof at the reasonable cause hearing. Because whoever had the burden, there is either some evidence to support the implied findings supporting the trial court's judgment, or the contrary position is not established as a matter of law. *See In re Estate of Livingston,* 999 S.W.2d 874, 879 (Tex.App.--El Paso 1999, no pet.)(stating legal sufficiency standard for a party with and without the burden of proof); *Creative Manufacturing, Inc. v. Unik, Inc.,* 726 S.W.2d 207, 210 (Tex.App.--Fort Worth 1987, writ ref'd n.r.e.)(same). For these reasons, we overrule Issue One and affirm the judgment of the trial court.

December 15, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

11