

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRENDA SANCHEZ | § | No. 08-22-00161-CR |
| Appellant, | § | Appeal from the |
| v. | § | 171st Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20190D06572) |

## MEMORANDUM OPINION

Following a bench trial, Appellant was found guilty of one count of Class A Misdemeanor Assault, but pursuant to an agreement with the State, the court entered an Order of Deferred Adjudication placing Appellant on deferred adjudication community supervision for one year. Appellant raises three issues on appeal. First, she contends the record does not demonstrate that she signed a written waiver of her jury-trial right as required by the Texas Code of Criminal Procedure. Second, she contends the trial court failed to correctly apply the law in rejecting her self-defense claim. And third, she contends the trial court erred in denying her motion for new trial. For the reasons set forth below, we affirm the trial court's Order of Deferred Adjudication.

FACTUAL AND PROCEDURAL BACKGROUND

A. The State's evidence

Appellant was indicted on one count of the felony offense of aggravated assault with a deadly weapon, in which the State alleged Appellant struck Belen Pacheco (Belen)[1] on the head with "brass knuckles" in July 2019. At trial, Belen testified that at the time of the alleged assault, she was dating Allen Montes (Allen), a man with whom Appellant had a prior relationship and two children. On the day of the assault, Belen was visiting Allen's mother, Elvira Vega (Elvira), at her home when Appellant and Allen's cousin, Sapphire,[2] arrived. Belen went outside, where Sapphire and Appellant accused Belen of breaking up Appellant's relationship with Allen and began pulling Belen's hair, telling her to leave. Elvira and a friend who was visiting, Celia Carolina Martinez (Celia), both testified that they observed Sapphire and Appellant hitting Belen in front of the house.

After Elvira was able to separate them, she and Belen drove to a local restaurant where Allen worked, while Celia, who remained in the house, called 911. Elvira went inside the restaurant to alert Allen about the situation. Belen recalled that while waiting in the car, Appellant began banging on the car window. When Elvira returned to the parking lot, Belen exited the car with the intent of running inside the restaurant, but Appellant attacked her, hitting, punching, and kicking her "everywhere," including her head and stomach, then pushed her to the ground while continuing to hit her. Elvia and Allen both testified that they observed Belen on the ground and Appellant on

---

[1] Belen is also referred to in the record as "Belem."

[2] Sapphire is also referred to in the record as "Safiro."

top of her, hitting her. They sought to separate the two. Allen acknowledged he did not know who started the fight, as it was ongoing when he came out of the restaurant; however, he testified that he did not observe Belen hit Appellant or Sapphire at any time and believed that Belen was trying to defend herself.

Belen testified that at some point during the melee, Appellant went to the van then came back and hit her on the head with what she believed to be brass knuckles, causing her head to bleed. Appellant and Sapphire then drove away in the van, and shortly thereafter, the police and an ambulance arrived on the scene.

Belen acknowledged that she initially told police at the scene Sapphire had hit her on the head with the brass knuckles; however, she explained that she did not want to blame Appellant for her injury at the time, as she was frightened of Appellant due to two prior incidents in which Appellant had confronted her and Allen, pushing her, biting Allen, and threatening to prevent Allen from seeing their children. Belen averred at trial, however, that she was certain it was Appellant who had hit her on the head.

Both Allen and Elvira testified they did not know who hit Belen on the head. Elvira, however, acknowledged she told police at the scene that she saw Sapphire holding "something in her hand," which she believed Sapphire had used to hit Appellant on the head. Allen, on the other hand, testified that he heard Belen say it was Appellant who hit her. Allen also testified that he saw the brass knuckles in Sapphire's van when he first exited the restaurant.

**B. Appellant's testimony**

Appellant testified at trial and provided a different version of the events, recalling that she was in Sapphire's van with her children when Sapphire stopped at Elvira's house, telling Appellant

she was going to pick up some items. She testified that while waiting in the van with the window down, Elvira came out and began pulling her hair, telling her to leave. She further recalled that her daughter exited the van to try to stop Elvira, but Elvira pushed her daughter, prompting Appellant to push Elvira away. According to Appellant, she and her daughter returned to the van, and Appellant asked Sapphire to drive them to her apartment. However, Sapphire drove them to Allen's workplace, with Belen and Elvira following them. According to Appellant, when she exited the van, Elvira began pulling her hair again, and she observed Belen approaching her in a threatening manner. Appellant testified that although she did not know who "threw the first blow," she and Belen admittedly "started fighting and assaulting physically each other." Appellant also recalled that at some point during the fight, both Allen and Elvira were holding her down, allowing Belen to hit her while Appellant tried to defend herself and "wriggle" away. According to Appellant, at some point Sapphire joined in the fray, and after she was able to get up, Appellant ran to the van, where her daughter told her that Sapphire had taken "something" out of the van. At her prompting, Sapphire got into the van and the two drove away before the police arrived.

According to Appellant, she acted in self-defense throughout her encounters with Belen that day. On cross-examination, however, the State introduced a screenshot of a Facebook message exchange between Appellant and another individual the next day in which she stated, referring to Allen, "yesterday I beat up the bitch that he now has."

### C. The trial court places Appellant on deferred adjudication community service

At the close of trial, the court found Appellant not guilty of aggravated assault with a deadly weapon as alleged in the indictment, pointing out that Belen had reported to police shortly after the assault—when her memory was fresh—that Sapphire was the person who had hit her with the

4

brass knuckles. However, the trial court found Appellant guilty of misdemeanor assault and expressly rejected her self-defense claim. The trial court gave the parties time to discuss an appropriate sentence after which they reported an agreement to give Appellant deferred adjudication community service for one year. The trial court agreed and explained the terms of probation. The trial court entered an "Order of Deferred Adjudication," reciting the parties' agreement and finding the evidence "substantiates [Appellant's] guilt," and it is "in the best interest of society and [Appellant] to defer proceedings without entering an adjudication of guilt and to place [Appellant] on deferred adjudication community supervision" for one year.

At Appellant's request, the trial court entered Findings of Fact and Conclusions of Law, indicating the evidence presented at trial supported a finding that Appellant was the aggressor; that Belen suffered injuries; that Appellant committed assault; and that Appellant did not prove her self-defense claim. However, the court also found that Belen did not suffer serious bodily injury and that no witnesses testified they saw Appellant with "brass knuckles."

Appellant filed a combined motion for new trial and motion in arrest of judgment, contending the trial court's verdict was "contrary to the law and the evidence," citing Texas Rules of Appellate Procedure 21 and 22, but providing no argument in support of her contention. Appellant also argued a new trial was warranted in the "interest of justice," but identified no reasons why. The motion was overruled by operation of law.

Appellant filed her notice of appeal and the trial court certified Appellant's right to appeal.[3]

---

[3] The notice of appeal mistakenly states Appellant was appealing from a "judgment of conviction and sentence." As set forth above, the trial court did not enter a judgment of conviction, and instead entered an Order of Deferred Adjudication, deferring her finding of guilt. Such orders are considered appealable under Texas Code of Criminal Procedure Article 44.01(J). *See Manuel v. State*, 994 S.W.2d 658, 661 (Tex. Crim. App. 1999). The State does not

**D.  The remand to the trial court**

On appeal, Appellant argued, among other things, that the trial court failed to file a written waiver of her jury-trial right as required by Texas Rules of Criminal Procedure Article 1.13. As no waiver appeared in the record before us, we abated the appeal and remanded the matter to the trial court to hold a hearing and make findings of fact and conclusions of law on the following questions: "(1) whether Sanchez executed a written jury waiver; (2) whether Sanchez knowingly and intelligently waived her right to a trial by jury; (3) whether Sanchez consented to a trial before the court without a jury; and (4) whether the recitations in the trial court's order of deferred adjudication, which states that Sanchez waived the right to a trial by jury, accurately reflected the trial proceedings."

At the hearing, the State presented evidence of an email exchange from shortly before trial between defense counsel, the trial judge, and the prosecutor. The exchange starts with defense counsel asking the judge if she would release Appellant on a PR bond the week before trial. The judge stated she would not grant a PR bond, and the prosecutor stated he would not agree to a PR bond but would not be opposed to a bench trial. Defense counsel then stated he also wanted a bench trial, as well as a PR bond, and he had "just returned from the annex to ask [Appellant]. She feels comfortable with a bench trial. So [a] PR bond and bench trial would be ideal." The trial court then asked the prosecutor if he would waive the State's right to a bench trial, and the prosecutor agreed. Thereafter, the State sought to call Appellant to the stand, but she took her

---

challenge Appellant's right to appeal, and we conclude we have the authority to entertain the appeal. *See generally City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 418 (Tex. 1992) (recognizing that a court of appeals has jurisdiction over an appeal when the appellant files an instrument that is "a bona fide attempt to invoke appellate court jurisdiction").

attorney's advice to invoke her Fifth Amendment to remain silent, refusing to answer any questions. Her attorney also refused to answer any questions on the ground of attorney-client privilege. And defense counsel stated he had no evidence to present at the hearing.

In its Findings of Fact and Conclusions of Law, the trial court found that although the record did not contain a written waiver of Appellant's jury trial rights, it nevertheless reflected Appellant "knowingly and intelligently" waived her right to a jury trial. In particular, the court found the following significant: (1) its Order of Deferred Disposition contained a recitation that Appellant waived her right to a jury trial, and Appellant did not present any evidence to rebut the recitation; and (2) the email exchange between defense counsel and the prosecutor discussing their agreement to waive a jury trial. In addition, the trial court found that Appellant's invocation of her Fifth Amendment right was "specious, meritless and made to intentionally avoid truthful testimony on the waiver-of-jury trial issues presented, answers to which would in no way would have tended to incriminate her," and that defense counsel had "no lawful basis for invoking the attorney-client privilege" for refusing to testify.[4] The trial court further concluded that Appellant had invited error by refusing to present any evidence and was therefore "estopped" from claiming that she did not voluntarily and knowingly waive her jury-trial right.

Upon receiving the trial court's findings and hearing record, we reinstated the appeal. The State filed a supplemental brief arguing that the evidence demonstrated Appellant knowingly and intelligently agreed to waive her jury-trial right. Alternatively, the State maintained that by

---

[4] On remand, Appellant's attorney filed a brief in the trial court, arguing Appellant had the right to invoke the Fifth Amendment under these circumstances, and he was prohibited from testifying as to any communications with Appellant due to attorney-client privilege. The State also filed a brief in the trial court, contending that neither the Fifth Amendment nor the attorney-client privilege applied.

refusing to testify, Appellant waived her right to argue her rights were violated. Appellant did not file a supplemental brief.

## ABSENCE OF A WRITTEN JURY TRIAL WAIVER

In Issue One, Appellant contends the trial court erred by failing to obtain a written waiver of her jury-trial right as required by Texas Code of Criminal Procedure Article 1.13. Although no written waiver appears in the record, a reversal of the trial court's judgment is not warranted.

### A. Applicable law

Texas Code of Criminal Procedure Article 1.13(a) provides in part that in a non-death penalty case, a defendant

> shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that . . . the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea.

TEX. CODE CRIM. PRO. ANN. ART. 1.13 (a). It is well-established, however, that failing to file written waiver in violation of the Code may be "harmless" if the record otherwise demonstrates the defendant voluntarily and knowingly waived her jury-trial right. *See Johnson v. State*, 72 S.W.3d 346, 346–49 (Tex. Crim. App. 2002); *Rios v. State*, 665 S.W.3d 467, 485–86 (Tex. Crim. App. 2022); *Lira v. State*, 666 S.W.3d 498, 518–19 (Tex. Crim. App. 2023). In *Johnson*, the Court of Criminal Appeals held that when a defendant "alleges merely that there was no written jury waiver, and does not allege that there was no jury waiver at all, he alleges statutory error, not constitutional error." *Johnson*, 72, S.W. 3d at 348. And the court therefore analyzed any harm resulting from a violation of the statute under Appellate Rule 44.2(b), which provides that a court

must disregard any error not affecting the defendant's "substantial rights." *Id.*; *see also Rios*, 665 S.W.3d at 477–78) (reaffirming its ruling in *Johnson* that the failure to file a written waiver can be considered "harmless" when evidence in the record supports that the waiver was voluntarily and knowing); *Lira v. State*, 666 S.W.3d at 519) (citing *Johnson* for the proposition that a trial court's failure to obtain a written jury waiver from a defendant can be considered harmless error, where there was "consent as a matter of fact" to a bench trial).

In analyzing harm for the alleged statutory violation, the majority in *Johnson* found it significant that the judgment of conviction contained a recital stating the defendant had waived his jury-trial right. *Id.* at 349. And the court concluded such a "recitation is binding in the absence of direct proof of [its] falsity." *Id* at 349 (citing *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g). This "presumption of regularity" has been applied in cases where the defendant is alleging solely a statutory error in failing to obtain a written waiver under Article 1.13, as opposed to cases where the defendant is alleging his constitutional rights were violated because he did not knowingly and voluntarily waive his jury-trial right. *See Rios*, 665 S.W.3d at 477–78 (recognizing that the "presumption of regularity" stemming from a recitation in a judgment applies to cases involving statutory error under Article 1.13, rather than a "constitutional no-waiver claim"); *see also Clark v. State*, 592 S.W.3d 919, 932 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Johnson* for the proposition that a recital in the defendant's judgment of conviction that he had waived his right to a jury trial was "binding in the absence of direct proof of [its] falsity"); *Munguia v. State*, 636 S.W.3d 750, 757–60 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) ("[T]he recitation in the judgment established appellant's wavier of his right to trial by jury [and]

9

without direct evidence of the falsity of the recitals in the judgment, we are bound to presume the truthfulness and regularity of those recitals.").

## B. Analysis

In the present case, the trial court included the following recital in its Order of Deferred Adjudication: "Both parties announced ready for trial. Defendant waived the right of trial by jury." Here, the "presumption of regularity" doctrine applies because Appellant only alleged an Article 1.13 violation:

> In this case, the Clerk's Record contains no written waiver of trial by jury as required by Code of Criminal Procedure Article 1.13. When the bench trial began, the Appellant's counsel stated that "we can waive a jury trial. . . . ." **[R.R. Vol. 1 pg.10; 11 2–4].** Aside from this, nothing in the record shows, Appellant being admonished by the trial court as to the meaning and significance of waiving a jury to determine her guilt or innocence and punishment. Appellant did not expressly waive, in any form to the trial court, her right to a jury trial. Therefore, the trial court erred by proceeding with a bench trial without a written waiver of Appellant's right to a jury trial.

Notably, as in *Johnson*, while Appellant points out that the record fails to reflect that she waived her jury-trial rights either orally or in writing, she did not allege that she did not knowingly and intelligently waive her rights. *Johnson*, 72 S.W.3d at 349 (finding it significant that the defendant "never alleged that he did not know about his right to a jury trial, nor does the record indicate that he did not"). Moreover, she did not make any such arguments on remand, nor did she seek permission to file a supplemental brief following remand to counter the trial court's findings that she knowingly and intelligently waived her right to a jury trial.

Given the application of the presumption of regularity, Appellant had the burden to establish that the trial court's recitation in its Order of Deferred Adjudication of her jury-trial right waiver was false. Appellant failed in this regard. Appellant has pointed to nothing in the appellate

record, nor did she present any evidence at the remand hearing, to suggest that the recitation was false. In contrast, the State presented evidence of the email exchange between the attorneys and the judge prior to trial in which defense counsel stated he had consulted with Appellant and she felt "comfortable with a bench trial."

Moreover, the reporter's record from the trial begins with defense counsel stating that he wished to have the judge hear Appellant's case due to the judge's wisdom, and that he told his client "we can waive a jury trial because we're going to have all the benefits of [the] wisdom on the bench." Accordingly, the record confirms, rather than refutes, the recitation in the trial court's order stating Appellant waived her jury-trial right. We therefore conclude Appellant did not meet her burden to show the recitation was false.

Appellant's Issue One is overruled.

## REJECTION OF THE SELF-DEFENSE CLAIM

In Issue Two, Appellant contends the trial court failed to properly follow the law when it rejected Appellant's claim that she acted in self-defense. We disagree.

### A. Applicable law

Under a theory of self-defense, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Alcoser v. State*, 663 S.W.3d 160, 167 (Tex. Crim. App. 2022) (citing TEX. PENAL CODE ANN. § 9.31(a)). A "reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* (citing TEX. PENAL CODE ANN. § 1.07(42); *see also Lozano v. State*, 636 S.W.3d 25, 33

(Tex. Crim. App. 2021) ("[A] person's belief, absent direct evidence, generally must be inferred from the circumstances of the case.").

An individual is entitled to defend herself against multiple assailants. *See Sanders v. State*, 632 S.W.2d 346, 348 (Tex. Crim. App. [Panel Op.] 1982) (holding that "[w]hen there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant, the court should instruct the jury that he had a right to defend himself against either or both of them"). Under a "multiple assailants" theory, the defendant is not required to produce "evidence that each person defended against was an aggressor in his own right; it requires evidence that the defendant had a reasonable fear of serious bodily injury from a group of people acting together." *Jordan v. State*, 593 S.W.3d 340, 344 (Tex. Crim. App. 2020).

## B. The trial court's written findings control

Appellant contends the evidence she presented at trial demonstrated that she was attacked by Elvira and Belen and she had a right to defend herself against these multiple attackers. She argues the trial court failed to correctly apply the law on multiple attackers based on the following comment the court made at the close of trial:

> And the reason I'm finding her guilty of simple assault is I'm not finding the self-defense because she stated that Ms. Vega was the aggressor, the mother-in-law. She's not the complaining witness, so because she's not the complaining witness, I can't find self-defense. Ms. Vega is not the complaining witness, so if I believe her story that Ms. Vega was the aggressor, there's not self-defense because she's not the complaining witness.

Even if we were to assume the court misstated the law on self-defense, the court's statements are not dispositive of Appellant's contention that the trial court erroneously rejected

12

her self-defense claim. It is well-established that "oral comments from the bench cannot substitute for written findings of fact and conclusions of law and therefore do not limit the grounds upon which a ruling can be upheld." *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 889 (Tex. App.—El Paso 2012, no pet.) (citing *In re Doe 10*, 78 S.W.3d 338, 340 n. 2 (Tex. 2002); *In Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984 (per curiam))); *see also Getosa, Inc. v. City of El Paso*, 642 S.W.3d 941, 954–55 (Tex. App.—El Paso 2022, pet. denied) ("Oral comments from the bench do not constitute findings of fact[.]"). Therefore, an appellate court is prohibited from viewing a trial court's comments from the bench as being a "substitute for findings of fact and conclusions of law." *See In Interest of W.E.R.*, 669 S.W.2d at 716; *see also Seneca Ins. Co., Inc. v. Ross*, 507 S.W.3d 798, 803 (Tex. App.—El Paso 2015, no pet.) (observing that the rule pronounced by the Texas Supreme Court in *In re W.E.R.* "has been applied any number of times since").

Here, the trial court entered written findings of fact and conclusions of law, explaining her rejection of Appellant's self-defense claim, finding that Appellant was the "aggressor" in the fight with Belen. And, unlike her oral pronouncement at trial, the trial court did not make any written findings regarding Elvira's role in the assault. As explained below, we find the trial court's rejection of Appellant's claim of self-defense was justified.

## C. The sufficiency of the evidence

### (1) Standard of review

The State correctly points out that the question of whether a defendant acted in self-defense is a question of fact for the fact-finder. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)); *see also Shannon v. State*, No. 08-13-00320-CR, 2015 WL 6394922, at *3 (Tex. App.—El Paso Oct. 21, 2015, no pet.)

(not designated for publication) (recognizing that we must be mindful that self-defense is a fact issue to be determined by the fact-finder, and the fact-finder is free to accept or reject any defensive evidence on the issue). The State contends that the trial court's rejection of Appellant's self-defense claim is governed by the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which requires a reviewing court to "consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Braughton*, 569 S.W.3d at 608 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). This would be the correct standard if the trial court had entered a judgment of conviction finding Appellant guilty of the offense. *See Braughton* at 609 (applying *Jackson* standard in determining whether there was sufficient evidence in the record to support the jury's rejection of defendant's self-defense claim); *see also Shannon*, 2015 WL 6394922, at *3 (applying *Jackson* standard to jury's rejection of his self-defense claim).

Here, however, no judgment of conviction was entered, as the trial court deferred a finding of guilt and placed Appellant on deferred adjudication community supervision pursuant to Article 42A.101(a). Article 42A.101(a) provides that upon accepting a plea of either guilty or nolo contendere, a trial court may defer a finding of guilt and place the defendant on deferred adjudication community supervision if, upon hearing evidence, the court finds that the evidence "substantiates the defendant's guilt." TEX. CODE CRIM. PRO. ANN. ART. 42A.101(a).[5] When a

---

[5] Article 42A.101(a) provides that, subject to exceptions not applicable here, "if in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt and place the defendant on deferred adjudication community supervision." TEX. CODE CRIM. PRO. ANN. ART. 42A.101(a).

defendant enters such a plea and the trial court places the defendant on deferred adjudication community supervision, an appellate court does not review the trial court's judgment under the *Jackson* "beyond a reasonable doubt" standard. *See Maillart v. State*, No. 08-20-00233-CR, 2022 WL 970556, at *3–4 (Tex. App.—El Paso Mar. 31, 2022, pet. ref'd) (not designated for publication) (concluding that *Jackson* standard for legal sufficiency did not apply in reviewing a trial court's order placing a defendant on deferred adjudication community service); *see also Staggs v. State*, 314 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (recognizing that the *Jackson* standard does not apply in reviewing whether sufficient evidence supported trial court's decision to place defendant on deferred adjudication probation); *Ogg v. State*, No. 05-04-00840-CR, 2005 WL 1654600, at *2 (Tex. App.—Dallas July 15, 2005, no pet.) (not designated for publication) (concluding that when a defendant pleads no contest to a charge, a reviewing court does not apply the *Jackson* standard in reviewing the sufficiency of the evidence). This is because the *Jackson* standard is only applicable in cases in which the "federal constitution places the burden on the prosecution to establish guilt beyond a reasonable doubt." *Maillart*, 2022 WL 970556 at *3; *see also Ex parte Martin*, 747 S.W. 2d 789, 791 (Tex. Crim. App. 1988) (en banc) (recognizing same).

The plain language of the Code only requires a trial court to make a finding that there is evidence to substantiate the defendant's guilt when placing a defendant on deferred adjudication community supervision upon the defendant's plea of guilty or nolo contendere.[6] TEX. CODE CRIM.

---

[6] As set forth above, Article 42A.101(a) contemplates that a defendant must enter a plea of guilty or nolo contendere before the trial court may place the defendant on deferred adjudication community service. TEX. CODE CRIM. PRO. ANN. art. 42A.101(a). Here the record does not reflect that Appellant withdrew her initial "not guilty" plea or that she

15

PRO. ANN. ART. 42A.101(a). And in determining the sufficiency of the evidence to support the acceptance of a plea prior to placing a defendant on deferred adjudication community service, a reviewing court should look to Article 1.15, which provides that "the State must introduce evidence into the record showing the guilt of the defendant" before accepting the plea. *See Maillart*, 2022 WL 970556 at *3–4 (restricting our review of whether there was sufficient evidence to support the trial court's order placing defendant on deferred adjudication for a felony offense following the entry of a no-contest plea under the standard set forth in Article 1.15) (citing *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999) (recognizing that Article 1.15 applies to sufficiency of the evidence challenges raised on direct appeal from an order placing a defendant on deferred-adjudication community supervision following the entry of a plea)). Under this standard, the "evidence [presented] will suffice to support the guilty plea so long as it embraces

entered a plea of either guilty or nolo contendere. And while it may have been error for the trial court to overlook this step in the proceedings, the parties have not raised this issue on appeal. In the past, some courts have held that when a defendant has been placed on deferred adjudication in violation of the statute, the trial court's order is "void," citing to the principle that an illegally imposed sentence is void, thereby allowing an appellate court to address the issue sua sponte as unassigned error. *See, e.g., Rodriguez v. State*, 939 S.W.2d 211, 222 (Tex. App.—Austin 1997, no pet.) (holding that order placing defendant on deferred adjudication community service in violation of statute was void and could be considered by court of appeals as unassigned error) (citing *Heath v. State*, 817 S.W.2d 335, 336 (Tex. Crim. App. 1991) (recognizing that if a punishment is not authorized by law, the portion of the sentence imposing that punishment is void)); *see also Visosky v. State*, 953 S.W.2d 819, 820–21 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) (holding same). However, the Texas Court of Criminal Appeals has since clarified that the imposition of community supervision probation is not a "sentence," and therefore, the "illegal granting of community supervision should not be governed by a rule which applies to illegal sentences." *Ex parte Williams*, 65 S.W.3d 656–57 (Tex. Crim. App. 2001) (en banc). Accordingly, an order placing a defendant on deferred adjudication community service, even if not authorized by statute, cannot be considered void. *Id.* at 657–59 (holding that an unauthorized grant of probation did not constitute an illegal or void sentence); *see also State v. Enriquez*, 47 S.W.3d 177, 178–79 (Tex. App.—El Paso 2001, no pet.) (recognizing that in general, when a punishment is not authorized by law, the sentence is considered illegal and therefore void, but that the imposition of community supervision probation could not be considered a sentence under the holding in *Williams*); *Ortegon v. State*, 497 S.W.3d 527, 530 (Tex. App.—San Antonio 2016, no pet.) (order placing defendant on deferred adjudication community service was entered in error but did not render the order void); *Jackson v. State*, No. 05-09-00650-CR, 2010 WL 297945, at *2 (Tex. App.—Dallas Jan. 27, 2010, no pet.) (not designated for publication) (unauthorized order placing defendant on deferred adjudication community supervision was not a void sentence).

16

every constituent element of the charged offense." *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

Here, regardless of the standard applied, we conclude that sufficient evidence supported the trial court's finding that Appellant committed assault and that she did not act in self-defense.

**(2)  Analysis**

The elements of the offense of assault are found in Texas Code of Criminal Procedure Section 22.01, which provides: "A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse[.]" TEX. PEN. CODE ANN. § 22.01(a). Bodily injury is defined as: "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8).

As set forth above, Appellant did not deny that she fought with Belen or that she caused Belen bodily injury, but only claimed that she acted in self-defense in doing so. Accordingly, to establish her claim of self-defense, Appellant was required to demonstrate that she had a reasonable belief that the use of force against Belen was necessary to protect herself from either Belen or Elvira. *Alcoser*, 663 S.W.3d at 167. Here, Appellant contends that there was "ample evidence" to support a finding that she acted in self-defense, but in making her argument, she merely summarizes her own testimony in which she claimed that Elvira and Belen were the first aggressors who provoked her into the confrontation. Appellant's testimony, however, was contradicted by Belen and other witnesses at the scene. As described above, Belen testified that Appellant initiated the confrontation by hitting, punching, and kicking her. And while neither Elvira nor Allen saw the start of the fight, they both testified that they observed Appellant on top of Belen, hitting her, adding credence to Belen's version of the events. The trial court, as the trier

17

of fact, was tasked with assessing the credibility of the witnesses, and was free to reject Appellant's version of events and instead believe the State's witnesses' version of events. *See Braughton*, 569 S.W.3d at 610 (given two conflicting versions of events, it was up to the trier of fact to decide whether to believe the defendant's claim of self-defense).

Accordingly, we find sufficient evidence to support the trial court's finding that Appellant committed assault and did not act in self-defense.

Appellant's Issue Two is overruled.

## DENIAL OF THE MOTION FOR NEW TRIAL

In Issue Three, Appellant contends the trial court erred in denying her motion for a new trial because the trial court's "verdict is contrary to the law and evidence," citing to Texas Rule of Appellate Procedure 21.3.[7] *See* TEX. R. APP. P. 21.3 (h) (trial court may grant a new trial "when the verdict is contrary to the law and the evidence"). However, because the trial court did not enter a judgment of conviction and instead entered an Order of Deferred Adjudication, Appellant was not entitled to file a motion for new trial. As the Texas Court of Criminal Appeals has explained, Rule 21.1, which governs motions for new trial, defines a "new trial" as "the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt." *Donovan v. State*, 68 S.W.3d 633, 635 (Tex. Crim. App. 2002) (en banc) (citing Texas Rule of Appellate Procedure 21.1). The court held that a "verdict of guilt is a jury's assessment of guilt in

---

[7] In her brief, Appellant argues she "is entitled to a new trial on a Class A Misdemeanor Assault when the trial court found Appellant not guilty of a felony charge." As the State points out, it is unclear whether Appellant is raising a claim of insufficiency of the evidence (a claim we have already rejected), or she is arguing that the trial court did not have the authority to find her guilty of assault as a lesser included offense of the charged felony offense of aggravated assault with a deadly weapon. Either way, we need not address the argument given our ruling that Appellant was not entitled to bring a motion for new trial after being placed on deferred adjudication community supervision.

a jury trial while a finding of guilt is a judge's assessment of guilt in a bench trial." *Id.* The court pointed out, however, that "[u]nder the deferred adjudication scheme, a judge does not make a finding of guilt; instead, the judge makes a finding that the evidence substantiates the defendant's guilt and then defers the adjudication." *Id.* at 636. And the court expressly rejected the argument that a "finding that the evidence substantiates guilt is a finding of guilt." *Id.* at 636. The court therefore held that "[b]ecause there is no finding or verdict of guilt, there is nothing that can be set aside so as to create an occasion for implementation of Rule 21." *Id.* at 636; *see also Adame v. State*, No. 08-09-00222-CR, 2010 WL 380908, at *2 (Tex. App.—El Paso Feb. 3, 2010, no pet.) (mem. op., not designated for publication) (recognizing that under *Donovan*, a trial court has no authority to grant a new trial under Rule 21 when a defendant has been placed on deferred adjudication "because a finding of guilt has not been made").

If Appellant had wished to do so, she could have filed a motion for adjudication within 30 days of the entry of the court's order, which would have allowed the trial court to proceed to final adjudication, and in turn would have allowed Appellant to move for a new trial. *Id.* at 637 (citing TEX. CODE OF CRIM. PROC. ANN. ART. 42.12, § 5(a)). However, Appellant did not move for adjudication, and therefore the trial court had no authority to consider her motion for new trial. *Id.* at 638; *see also Cooper v. State*, No. 12-20-00075-CR, 2021 WL 306204, at *2 (Tex. App.—Tyler Jan. 29, 2021, no pet.) (mem. op., not designated for publication) (recognizing that a court has no authority to hear or grant a motion for new trial when a defendant has been placed on deferred adjudication and the defendant has not timely moved for adjudication of his guilt). Accordingly,

the trial court did not err in allowing Appellant's motion for new trial to be denied by operation of law.[8]

Appellant's Issue Three is overruled.

## CONCLUSION

The trial court's Order of Deferred Adjudication is affirmed.


LISA J. SOTO, Justice


January 31, 2024

Before Alley, C.J., Palafox, Soto, JJ.

(Do Not Publish)

---

[8] We note that in the trial court, Appellant also moved to "arrest" the trial court's judgment under Texas Rule of Appellate Procedure 22. *See* TEX. R. APP. P. 22.2 (a defendant may file a motion in arrest of judgment alleging, among other things, that a "verdict is substantively defective" or that the "judgment is invalid for some other reason"). Appellant does not, however, address the issue of whether the trial court erred in refusing to grant the motion in arrest of judgment under Rule 22.2, and we therefore do not address it in our analysis.